IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| CENK UYGUR and JOHN WARD, Plaintiffs,<br><br>v.<br><br>SOUTH CAROLINA; HENRY MCMASTER, in his official capacity as Governor of South Carolina; ALAN WILSON, in his official capacity as Attorney General of South Carolina; MARK HAMMOND, in his capacity as Secretary of State of South Carolina; SOUTH CAROLINA DEMOCRATIC PARTY; SOUTH CAROLINA STATE ELECTION COMMISSION, JOHN WELLS, and HOWARD M. KNAPP, in their official capacities as Chairman and Executive Director, respectively, of the South Carolina State Election Commission,<br><br>                      Defendants. | Case No.: 3:23-6879-JFA<br><br><br>**SEC DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY AND EMERGENCY INJUNCTIVE RELIEF** |

      Defendants, South Carolina State Election Commission ("SEC"), John Wells and Howard M. Knapp, in their official capacities as Chairman and Executive Director of the SEC ("SEC Defendants")(collectively "SEC Defendants"), respectfully submit this memorandum in opposition to the Motion for Declaratory and Emergency Injunctive Relief of Plaintiffs Cenk Uygur ("Uygur") and John Ward ("Ward")(collectively, "Plaintiffs").

      Plaintiffs' Motion should be denied because Plaintiffs do not establish any of the grounds for entitlement to a preliminary injunction under Rule 65, FRCP. The SEC Defendants also rely on their Motion to Dismiss the Complaint and Incorporated Memorandum, which is being incorporated by reference as if fully stated herein.

1

52684074 v2.doc

## RELEVANT BACKGROUND AND ALLEGATIONS

The SEC is an agency of the executive branch of government of the State of South Carolina, responsible for overseeing the election and voter registration process in this State. Defendant Knapp is the SEC's Executive Director, and Defendant Wells is the SEC's Chairman. The specific powers, duties, and responsibilities of the SEC Defendants are defined and limited by Title 7 of the South Carolina Code Ann. See *Captain's Quarters Motor Inn, Inc. v. S. Carolina Coastal Council*, 306 S.C. 488, 490, 413 S.E.2d 13, 14 (S.C. 1991)("As a creature of statute, [the SEC Defendants are] possessed of only those powers expressly conferred or necessarily implied for [them] to effectively fulfill the duties with which [they are] charged.").

On February 3, 2024, the South Carolina Democratic Party ("SCDP") will hold a Presidential Preference Primary ("PPP") election. [*See* Compl. at 2-3 ¶ 4 ECF No. 1]. S.C. Code Ann. § 7-11-20, which governs the conduct of PPP elections, provides that the SEC "must conduct the presidential preference primary in accordance with the provisions of [Title 7] and party rules." However, the statute also provides that "*[p]olitical parties* must verify the qualifications of candidates prior to certifying to the State Election Commission the names of candidates to be placed on primary ballots" and "*[p]olitical parties* must not certify any candidate who does not or will not by the time of the general election meet the qualifications in the United States Constitution, statutory law, and party rules for the presidential preference primary for which the candidate desires to file, and such candidate's name must not be placed on a primary ballot." § 7-11-20(B)(2). (Emphasis added). Thus, the SEC has a limited role in the conduct of PPPs. These responsibilities do not include vetting candidate qualifications. The SEC has no role whatsoever in the formulation of the parties' Delegate Selection Plan for the purposes of a Presidential election. See S.C. Code Ann, Title 7; see also **Exhibit A**, Affidavit of Howard M. Knapp at ¶ 17.

52684074 v2.doc

Plaintiff Uygur alleges he is a naturalized American citizen who wishes to be a candidate for President of the United States in the SCDP PPP and Plaintiff Ward allegedly wishes to vote for Uygur in the PPP. [*See* Compl. at 2-3 ¶ 4 ECF No. 1]. Plaintiffs allege that Uygur announced his candidacy in October of 2023 [*Id.* at 7 ¶ 24 ECF No. 1] and assert that "Uygur and his campaign made the State's ballot application process a priority" [*Id.* at 8 ¶ 28 ECF No. 1]. Plaintiffs also allege that Uygur timely filed a Presidential Notice of Candidacy and Pledge with the SCDP on November 6, 2023, along with the required $20,000 "application fee," which was accepted and cashed by the SCDP. [*See Id.* at 8-9 ¶ 32]. They allege that on November 13, 2023, the SCDP issued a press release with the names of the approved candidates and indicated Uygur was not approved because he did not "meet constitutional requirement to hold the office of President of the United States." [*Id.* at 9 ¶ 35]. Pursuant to Title 7, the SEC had no part in that process, and only learned about Uygur's desire to be on the SCDP PPP ballot when learning about this lawsuit on December 27, 2023. Knapp Aff. ¶ 18.

In addition to seeking various declaratory relief, Plaintiffs are requesting, *inter alia*, that this Court enjoin Defendants (presumably including the SEC Defendants) from (1) "applying and enforcing" S.C. Code Ann. § 7-11-20 and the SCDP Delegate Selection Plan, "to the extent they disqualify naturalized American citizens from having their names included on the primary ballot;" [*Id.* at 24 ¶ 4-6, ECF No. 1]; and (2) "failing to take all steps necessary to place Mr. Uygur's name on the ballot for the February 2024 Presidential Preference Primary; [*Id.* at 24 ¶ 7-8 ECF No. 1].

## DISCUSSION

Rule 65 of the Federal Rules of Civil Procedure ("FRCP") provides for the issuance of preliminary injunctions to prevent harm to a party before the Court can fully adjudicate the claims in dispute. Rule 65, FRCP. Courts have universally recognized that a preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be

3

applied only in the limited circumstances which clearly demand it." *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013)(internal quotations omitted)."[A]pplication of th[e] exacting standard of review [for preliminary injunctions] is even more searching when" the relief requested "is mandatory rather than prohibitory in nature." *De La Fuente v. S.C. Democratic Party*, 164 F. Supp. 3d 794, 798 (D.S.C. 2016)(*quoting Perry v. Judd*, 471 Fed. Appx. 219, 223–24 (4th Cir. 2012)). "The traditional purpose of a preliminary injunction is to 'protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits.'" *De La Fuente* 164 F. Supp.3d at 798 (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)).

A plaintiff seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits of the case; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Plaintiffs have not demonstrated ***any*** of the elements necessary to meet the strict requirements for a preliminary injunction.

**A.**     **<u>Plaintiffs are not likely to succeed on the merits</u>**

In order to prevail, the party seeking the injunction, must "make a 'clear showing' that he is likely to succeed on the merits… This standard compels the moving party to show that he is *likely* to prevail." *De La Fuente*, 164 F. Supp.3d at 798 (citing *Winter,* 555 U.S. at 22, and *Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 345 (4th Cir. 2009), *cert. granted, judgment vacated,* 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), and *adhered to in part sub nom. The Real Truth About Obama, Inc. v. F.E.C.,* 607 F.3d 355 (4th Cir. 2010)).

4

For many reasons which are more fully discussed in its Motion to Dismiss the Complaint and Incorporated Memorandum, Plaintiffs' allegations fail to meet that standard and they are highly unlikely to succeed on the merits. In summary, the Complaint is unlikely to succeed on the merits for the following reasons:

(1)     Plaintiffs' argument that the Natural Born Citizen Clause in the U.S. Constitution is unconstitutional fails as a matter of law;

(2)     Plaintiffs' argument that Fifth and Fourteenth Amendments to the Constitution expressly or implicitly nullified the Natural Born Citizen Clause fails as a matter of law;

(3)     The SEC Defendants lack the statutory power to disqualify Uygur from the SCDP PPP ballot in South Carolina, and had no role in his disqualification;

(4)     Plaintiffs lack constitutional standing to sue for these claims;

(5)     The SEC Defendants have sovereign immunity from being brought into federal court.

B.     **Plaintiffs will suffer no irreparable harm**

To establish a right to relief, Plaintiffs also "must make a clear showing that he is likely to be irreparably harmed if preliminary relief is denied." *De La Fuente*, 164 F. Supp. 3d at 798 (D.S.C. 2016)(citing *Winter*, 555 U.S. 7). In their Complaint and request for injunctive relief, Plaintiffs claim, but allege no fact sufficient to establish the existence of irreparable harm.

Plaintiffs cannot show irreparable harm. To the extent they are harmed, it is first and foremost due to their own unexcused delay in filing this lawsuit. Plaintiffs allege that Uygur announced his candidacy in October of 2023. [*See Id.* at 7 ¶ 24 ECF No. 1] and assert that "Uygur and his campaign made the State's ballot application process a priority" [Compl. at 8 ¶ 28 ECF No. 1]. The February 3, 2024, SCDP PPP primary date has been well-publicized since at least

February 4, 2023.[1]  Regardless of whether Uygur believes the U.S. Constitution prevents his candidacy, it could hardly have been surprising at the outset of his campaign that his citizenship status would be an issue.  By November 13, 2023 – at the latest – Uygur had notice that that SCDP rejected his candidacy in finding that he "[d]oesn't meet the constitutional requirement to hold the office of President of the United States."  [*Id.* at 9 ¶¶ 33, 35 ECF No. 1].  Plaintiffs inexplicably waited until December 22, 2023 to file this action.  Plaintiffs cannot use their own delay to create an "emergency" for this Court and Defendants.

In *De La Fuente*, discussed *supra*, a putative Presidential candidate sued the SEC and SCDP seeking, *inter alia*, a mandatory injunction requiring his inclusion on the primary ballot. *See* 164 F. Supp. 3d at 805. In that case, plaintiff was notified via letter on December 29, 2015 that his filing was not approved, but then waited until February 2, 2016 (approximately 35 days) to file his action. *See Id.* at 797.  In denying his request for injunctive relief, Judge Currie found that plaintiff's failure to "take immediate action" and waiting "until over a month later" to file his Complaint after discovering he was not certified as a candidate was unreasonable delay. *See Id.* at 804.  Here, Uygur waited longer – approximately thirty-nine (39) days – between learning of his disqualification and filing the suit. Uygur also waiting nearly eleven (11) months after the announcement of the date of the SCDP PPP.

Similar to the situation here, De La Fuente's supposed harm was determined to be lessened or non-existent because of his lack of seriousness as a candidate. On this point, Judge Currie found that "[t]he alleged harm is negligible, as De La Fuente was not actively campaigning in South

---

[1] Alex Seitz-Wald, <u>Democrats make South Carolina first presidential primary voting state</u>, NBC News (Feb. 4, 2023 at 12:29 PM EST), https://www.nbcnews.com/politics/2024-election/democrats-make-south-carolina-first-presidential-primary-voting-state-rcna68918

52684074 v2.doc

Carolina and had minimal likelihood of winning delegates through the South Carolina Primary." *Id.*

C.  **Balance of equities/public interest**

In this case, the balance of the equities and the public interest are co-extensive and both weigh heavily against the issuance of a preliminary injunction and in favor of SEC Defendants. In light of Plaintiffs' unexplained delay in bringing this action and for other reasons, the equities are not in their favor. Plaintiffs' Motion fails to demonstrate that the longstanding electoral processes and practices in place for the South Carolina Democratic PPP do not serve the public interest. The Motion mostly focuses on Uygur's purported interest as a candidate, not that of the public as a whole. As noted above, the February 3, 2024 date of the PPP election is coming soon and was well-publicized in the national media when the SCDP PPP was moved to the "first in the nation." The fact that Plaintiffs have requested the court alter the status quo, as opposed to maintaining it, further shows that the public interest is not served by the issuance of a preliminary injunction.

By contrast, the SEC Defendants have demonstrated in Knapp's Affidavit and otherwise that significant time, expense, and effort has been invested to meet the current schedule and comply with the Uniform and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C.A., §§ 20301-20311; *see also* **Exhibit A**. The UOCAVA deadline for mailing the finalized ballots was December 20, 2023, *two days prior* to December 22, 2023, when the lawsuit was filed. In other words, by the time Plaintiffs filed this lawsuit, more than a month after Uygur was declared disqualified, the deadline to finalize and mail the UOCAVA ballots to comply with state and federal law had passed. *See* **Exhibit A**. at ¶¶ 7, 10, 11. The public interest is well served by keeping the election processes in place, and having these processes comport with the requirements of state and federal law. Any court-ordered delay in that schedule would cause major disruption in the political process, risk considerable voter confusion, and impose significant additional taxpayer

7

expense. See *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring)(describing *Purcell* principle as "heighten[ing] the showing necessary for a plaintiff to overcome the State's extraordinarily strong interest in avoiding late, judicially imposed changes to its election laws and procedures."); *Andino v. Middleton,* 141 S. Ct. 9, 10, 208 L. Ed. 2d 7 (2020)("[F]or many years, this Court has repeatedly emphasized that federal courts ordinarily should not alter state election rules in the period close to an election.")(Kavanaugh, J., concurring)(citing *Purcell v. Gonzalez*, 549 U.S. 1, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006)).

## CONCLUSION

The Court should deny Plaintiffs' Motion for a Preliminary Injunction. The SEC Defendants further reserve the right to amend and/or supplement its Motion.

Respectfully Submitted,

*s/ Michael R. Burchstead*
Michael R. Burchstead (Fed. Bar #10297)
M. Elizabeth Crum (Fed. Bar # 372)
**BURR & FORMAN LLP**
Post Office Box 11390
1221 Main Street, Suite 1800
Columbia, SC  29201
Telephone:  (803) 799-9800
Facsimile:  (803) 753-3278

Thomas W. Nicholson (Fed. Bar # 12086)
**South Carolina State Election Commission**
1122 Lady St., 5th Floor,
Columbia, SC 29250
Telephone: (803) 734-9060
Facsimile: (803) 734-9366
*Attorneys for South Carolina Election Commission, John Wells and Howard Knapp*

January 5, 2024
Columbia, SC

52684074 v2.doc