IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Cenk Uygur and John Ward, | C/A No. 3:23-cv-6879-JFA |
| Plaintiffs, | |
| vs. | |
| South Carolina; Henry McMaster, in his official capacity as Governor of South Carolina; Alan Wilson, in his official capacity as Attorney General of South Carolina; Mark Hammond, in his official capacity as Secretary of State of South Carolina; South Carolina Democratic Party; South Carolina State Election Commission, John Wells, and Howard M. Knapp, in their official capacities as Chairman and Executive Director, respectively, of the South Carolina State Election Commission, | **ORDER** |
| Defendants. | |

In this action, plaintiffs Cenk Uygur and John Ward seek a preliminary injunction[1]

pursuant to Federal Rule of Civil Procedure 65 to enjoin defendants South Carolina, Henry

McMaster, Alan Wilson, Mark Hammond, South Carolina Democratic Party (the

"SCDP"), South Carolina State Election Commission (the "SEC"), John Wells, and

Howard M. Knapp from (1) applying and enforcing South Carolina's Ballot Access Statute,

S.C. Code Ann. § 7-11-20, (the "Statute") and the South Carolina Delegate Selection Plan

---

[1] Plaintiffs initially sought relief via a request for an *ex parte* temporary restraining order. However, as all parties had appeared and filed responsive briefing prior to the hearing on this matter, the Court converted the proceedings into one for a preliminary injunction with no objection from the parties. Fed. R. Civ. P. 65 ("The court may issue a preliminary injunction only on notice to the adverse party.").

(the "Plan"), to the extent they disqualify naturalized American citizens from having their names included on the primary ballot; and (2) failing to take all steps necessary to place Uygur's name on the ballot for the February 3, 2024 Presidential Preference Primary ("PPP"). (ECF No. 2).

Underpinning this initial request for injunctive relief is Plaintiffs' ultimate request for a declaratory judgment that (1) the natural born citizenship clause of the United States Constitution has been nullified and repealed, either implicitly or explicitly, by the Fifth and Fourteenth Amendments to the United States Constitution; (2) South Carolina's Ballot Access Statute, S.C. Code Ann. § 7-11-20, and the Delegate Selection Plan violate rights guaranteed to the Plaintiffs by the First, Fifth, and Fourteenth Amendments to the United States Constitution, as enforced by 42 U.S.C. § 1983; and (3) South Carolina's Ballot Access Statute, S.C. Code Ann. § 7-11-20, and the Delegate Selection Plan violate Title VI, 42 U.S.C. § 2000d *et seq.* of the Civil Rights Act of 1964.

After a litany of briefings, the Court heard oral argument from all parties on January 10, 2024. Given the time-sensitive nature of the request, the Court announced its ruling orally at the hearing and denied the Plaintiffs' motion for preliminary injunction. That ruling is hereby supplemented with this order.

## I.     FACTUAL[2] AND PROCEDURAL BACKGROUND

Plaintiff Cenk Uygur is a Turkish-born, naturalized American citizen who resides in Los Angeles, California. He is also running for President of the United States, despite Article II, Section 1, clause 5 of the United States Constitution's requirement that "[n]o person except a natural born citizen . . . shall be eligible to the office of President." Plaintiff John Ward is a registered voter in Horry County, South Carolina who supports Uygur's candidacy for President.

On November 6, 2023, Uygur filed a Presidential Notice of Candidacy and Pledge with the South Carolina Democratic Party with the intention of appearing on the South Carolina presidential primary election ballot. He also paid the required $20,000 application fee. However, South Carolina's Ballot Access Statute (S.C. Code Ann. § 7-11-20) and SCDP's Delegate Selection Plan (which cites to the Ballot Access Statute) require the SCDP to verify the qualifications of candidates prior to certifying their names to the State Election Commission to be placed on primary ballots.[3] Relevant here, the Statute requires that the political party "must not certify any candidate who does not . . . meet the qualifications in the United States Constitution." S,C. Code Ann. § 7-11-20(B)(2). The SCDP

---

[2] Except where specifically noted, virtually all facts relevant to this action are undisputed.

[3] This statute provides that "[p]olitical parties must verify the qualifications of candidates prior to certifying to the State Election Commission the names of candidates to be placed on primary ballots" and "[p]olitical parties must not certify any candidate who does not or will not by the time of the general election meet the qualifications in the United States Constitution, statutory law, and party rules for the presidential preference primary for which the candidate desires to file, and such candidate's name must not be placed on a primary ballot." S,C. Code Ann. § 7-11-20(B)(2).

did not certify Uygur to the State Election Commission as a candidate to appear on the South Carolina presidential primary ballot.

In a November 13, 2023, press release, the SCDP noted that the reason for Uygur's absence from the ballot was because he "[d]oesn't meet constitutional requirement to hold the office of President of the United States." No party disputes that this was a reference to the SCDP determination that Uygur is not a natural born citizen of the United States, which conflicts with the natural born citizenship requirement found in Article II, Section 1, clause 5 of the United States Constitution.

One fact the parties do dispute is whether Uygur fully satisfied all other provisions of the application process for the South Carolina Democratic Primary. The SCDP avers that Uygur failed to properly show that he was "taking demonstrable steps to qualify for the delegate selection process in more than 6 states." (ECF No. 53)(quoting the South Carolina Delegate Selection Plan).[4] If true, this would serve as a separate and independent basis for rejecting Uygur's application and keeping him off of the ballot. Plaintiffs did not aver that any such documentation was presented. However, Uygur claims that his attestation on the application was sufficient proof he was indeed seeking candidacy in other states. To his credit, Uygur has since been placed on the primary ballot in six other states.[5]

---

[4] The Delegation plan further states that the "burden of proof is upon the candidate to provide said information by 12 noon on Friday, November 10, 2023."

[5] Those states include Oklahoma, Minnesota, Texas, Vermont, Louisiana, and North Dakota.

However, he was not placed on the ballot in any of these states until after the South Carolina application and the November 13, 2023, press release.

Uygur then filed the instant suit on December 22, 2023. Shortly thereafter, this Court set a hearing on Plaintiff's motion for preliminary injunction. Thereafter, each defendant made an appearance, responded to Plaintiffs' motion for a preliminary injunction, and additionally filed motions to dismiss.

In their responsive briefing, Plaintiffs agreed that defendant Mark Hammond, in his capacity as Secretary of State of South Carolina, should be dismissed. Additionally, at the hearing, Plaintiffs agreed to dismiss the state of South Carolina; Henry McMaster, in his official capacity as Governor of South Carolina; and Alan Wilson, in his official Capacity as Attorney General of South Carolina.[6]

## II.    LEGAL STANDARD

Plaintiffs seeking a temporary restraining order and/or a preliminary injunction must establish four elements: (1) that plaintiffs will likely succeed on the merits; (2) that plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiffs' favor; and (4) that the granting of the injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20

---

[6] The motions to dismiss filed by the South Carolina Democratic Party and the South Carolina Election Commission remain pending and will be adjudicated via separate order.

(2008); *see also Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999).

"The Fourth Circuit no longer recognizes a flexible interplay among these criteria. Instead, each requirement must be fulfilled as articulated." *De La Fuente v. S.C. Democratic Party*, 164 F. Supp. 3d 794, 798 (D.S.C. 2016)(internal quotations omitted).

## III.    ANALYSIS

### a.   Likelihood of Success

First and foremost, Plaintiffs have failed to make a clear showing that there is a likelihood of success on the merits. Although the other factors required for preliminary injunctive relief also disfavor Plaintiffs, this first factor proves detrimental to Plaintiffs' claims.

The crux of Plaintiffs' claims is that the natural born citizenship requirement of the Constitution has been repealed and therefore its enforcement by the SCDP and associated actors is unconstitutional. In essence, Plaintiffs ask this Court to declare that a provision of the Constitution is itself unconstitutional. Specifically, Plaintiffs aver that the language of the Fourteenth Amendment repeals, either explicitly or implicitly, the natural born citizenship requirement. The Fourteenth Amendment provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor

deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV § 1.

Plaintiffs therefore reason that the language the Fourteenth Amendment expressly repeals the natural born citizenship requirement because it places citizens who were "born" and "naturalized" in the United States on equal footing. Although the word "repeal" is absent from this Amendment, Plaintiffs nevertheless aver that the plain language of the Fourteenth Amendment can only be read to repeal the natural born citizenship clause. To be sure, other portions of the Constitution have been "explicitly" repealed without use of the word repeal. For example, as one scholar observes, "the Seventeenth Amendment changed Article I, Section 3, which originally provided that senators be elected by the state legislators. The Twentieth Amendment changed the date of meeting for Congress, which was contained in Article I, Section 4. The Thirteenth Amendment changed the provision of Article IV, Section 2, Clause 3, regarding fugitive slaves." Malinda L. Seymore, *The Presidency and the Meaning of Citizenship*, 2005 B.Y.U. L. Rev. 927, 970 (2005).

The difference in the above examples and this case is that in those other instances, everyone understood exactly why the Constitution was being amended and what the amendment sought to achieve. The amendments listed above dealt directly with other constitutional provisions covering the exact same subject matter in patently different ways. Here, by contrast, centuries have gone by without anyone understanding the Fifth or Fourteenth Amendments to have covertly changed who was eligible to serve as President. There is simply no support for Plaintiffs' assertion that the general language included in

the Fourteenth Amendment overrides the specific language in the natural born citizen clause. This conclusion is bolstered by the principle that "a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 663, (2007) (quoting *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 153 (1978)). [7]

Furthermore, Plaintiffs argue that even if their theory of explicit repeal fails, the language of the Fourteenth Amendment and the natural born citizenship clause are in direct conflict such that a theory of implicit repeal still prevails.

Under the doctrine of implied repeal, a later statute may repeal an earlier one by implication when the two statutes "are in irreconcilable conflict." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976). Admittedly, this is a high bar as repeals by implication are not favored. *Id.* Irreconcilable conflict may exist if Plaintiffs can show "that there is a positive repugnancy between them or that they cannot mutually coexist." *Id.*

The problem here is that Plaintiffs offer no support for their position other than the argument that the plain language of the Fourteenth Amendment should be read by this Court to repeal the natural born citizenship requirement. However, Uygur is not the first naturalized candidate to assert such an argument. Unfortunately for him, each court to

---

[7] There appear to be no "cases directly addressing the applicability of the rules of statutory construction to the Constitution." *Hassan v. Colorado*, 870 F. Supp. 2d 1192, 1198 (D. Colo.), *aff'd,* 495 F. App'x 947 (10th Cir. 2012). However, most commentators and courts to address this issue have determined that "in the context of the larger topic of the various theories of constitutional interpretation, that the rules of statutory construction are applicable." *Id.*

consider such an argument has repeatedly found that the Fourteenth Amendment has not repealed the natural born citizenship requirement. *See, e.g., Pereira v. Fed. Govt of US*, No. CV232315KMLDW, 2023 WL 3271168, at *2 (D.N.J. May 4, 2023) ("[T]he Court's research has not uncovered a case in which a challenge to this explicit Constitutional provision has succeeded."); *Uddin v. Biden*, No. CV GJH-22-816, 2022 WL 1215515, at *1 (D. Md. Apr. 22, 2022) ("The Supreme Court has upheld the distinction between natural-born and naturalized citizens' eligibility to be President.") (*citing Schneider*, 377 U.S. at 165); *Hassan v. Iowa*, 2012 WL 12974068, at *5 (S.D. Iowa Apr. 26, 2012), aff'd, 493 F. App'x 813 (8th Cir. 2012) ("Plaintiff has failed to highlight any language in the Fi[f]th or Fourteenth Amendment clauses at issue that would create an 'irreconcilable conflict' with the Natural Born Citizen Clause, nor does the Court find that the Fourteenth Amendment clearly was intended as a substitute for Art. II, section 1."); *Hassan v. Montana*, 2012 WL 8169887, at *1 (D. Mont. May 3, 2012), aff'd, 520 F. App'x 553 (9th Cir. 2013) ("The generalized nature of the First, Fifth, Fourteenth and Fifteenth Amendments cannot trump the narrower, more specific Natural Born Citizen Clause. Furthermore, Hassan has not shown an irreconcilable conflict between the clause and constitutional amendments and fails to demonstrate Congressional intent to repeal the clause."); *Hassan v. Colorado*, 870 F. Supp. 2d 1192 ("[B]ecause the natural born clause has not been implicitly repealed, nor is it invalid under the Absurdity Doctrine, Colorado state laws requiring all presidential candidates to affirm that they are natural born citizens are constitutional."); *Hassan v. New Hampshire*, No. 11-CV-552-JD, 2012 WL 405620, at *4 (D.N.H. Feb. 8, 2012), aff'd, (Aug. 30, 2012) ("[B]ecause the Natural Born Citizen

Clause has not been implicitly repealed, New Hampshire state laws requiring all presidential candidates to affirm they are natural born citizens are constitutional."); *Hassan v. Fed. Election Comm'n*, 893 F. Supp. 2d 248, 257 (D.D.C. 2012), aff'd, No. 12-5335, 2013 WL 1164506 (D.C. Cir. Mar. 11, 2013) ("Because the natural born citizenship requirement has not been explicitly or implicitly repealed, Hassan's challenge to that provision, and the Fund Act's incorporation thereof, must fail."); *Hassan v. United States*, No. 08-CV-0938 NG, 2010 WL 9493338, at *3 (E.D.N.Y. June 15, 2010), aff'd, 441 F. App'x 10 (2d Cir. 2011) (holding the First, Fifth, Fourteenth, and Fifteenth Amendments did not repeal the Natural Born Citizen Clause).

Moreover, the Supreme Court has referenced the natural born citizenship requirement as a valid constitutional provision on several occasions. *See Schneider v. Rusk*, 377 U.S. 163, 165 (1964) ("We start from the premise that the rights of citizenship of the native born and of the naturalized person are of the same dignity and are coextensive. The only difference drawn by the Constitution is that only the 'natural born' citizen is eligible to be President.")(citing U.S. Const. art. II, § 1); *see also Knauer v. United States*, 328 U.S. 654, 658 (1946) (naturalized citizenship "carries with it all of the rights and prerogatives of citizenship obtained by birth in this country, save that of eligibility to the Presidency") (internal citation omitted); *see also Baumgartner v. United States*, 322 U.S. 665, 673 (1944) ("Under our Constitution, a naturalized citizen stands on equal footing with the

native citizen in all respects save that of eligibility to the Presidency.") (internal citation omitted).[8]

The sheer weight of authority against their position, combined with the inability to offer any primary authority for their arguments, is enough for this Court to determine that Plaintiffs have not shown a likelihood of success on the merits. As previous courts to tackle this issue have noted, "Plaintiff does not provide any specific arguments demonstrating congressional intent to repeal the natural born provision." *Hassan v. Colorado*, 870 F. Supp. 2d 1192, 1200 (D. Colo.), *aff'd,* 495 F. App'x 947 (10th Cir. 2012). Plaintiffs themselves acknowledge that success in their position would represent a "tectonic reinterpretation of the Fourteenth Amendment." (ECF No. 46, p. 3).[9]

The determination that the natural born citizenship requirement has not been repealed by the Fourteenth Amendment is detrimental to the remainder of Plaintiffs' claims. Plaintiffs aver that both the Ballot Access Statute and Delegate Selection Plan

---

[8] The Court does not necessarily disagree with Plaintiffs' suggestion that these statements were made in *dicta*. However, it seems odd that the Supreme Court would make such references if the natural born citizenship requirement had been explicitly repealed nearly 80-100 years earlier as Plaintiffs contend.

[9] The parties also dedicated numerous pages of briefing to discussing the legislative history surrounding the natural born citizen clause and the Fourteenth Amendment. As admitted at oral argument, this history is ambiguous and inconclusive on the issue of whether the Fourteenth Amendment repeals the natural born citizenship clause. Accordingly, at this stage of litigation, a review of the legislative history, including congressional debates, does little to move to needle on Plaintiffs' likelihood of success. However, other courts have pointed out that "there is no mention of repeal of the natural born provision in the congressional debates on the Civil Rights Act or the Fourteenth Amendment. [] This is strong evidence that the ratification of the Fourteenth Amendment was not intended to repeal the natural born provision." *Hassan v. Colorado*, 870 F. Supp. 2d 1192, 1200 (D. Colo.), *aff'd,* 495 F. App'x 947 (10th Cir. 2012).

discriminate on the basis of national origin, as both provisions require that a candidate appearing on the presidential primary be a natural born citizen. Plaintiffs' argument misses the mark. The Statute and Plan require a political party to certify that a candidate meets "the qualifications in the United States Constitution" before being approved for the ballot. S.C. Code Ann. § 7-11-20(B)(2). As discussed above, the natural born citizenship clause remains a valid prerequisite for service as President. By requiring that the candidates approved for PPP's are eligible to serve as President, it can hardly be said that enforcement of the Statute and related Plan are unconstitutional.

Plaintiffs specifically argue that the Statute and Plan violate the First Amendment. However, the First Amendment prohibits Congress from making laws abridging certain freedoms, whereas "the Natural Born Citizen Clause is not a 'law' passed by Congress, but a constitutional provision." *Hassan v. United States*, No. 08-CV-0938 NG, 2010 WL 9493338, at *3 (E.D.N.Y. June 15, 2010), aff'd, 441 F. App'x 10 (2d Cir. 2011). Thus, the First Amendment's plain language does not purport to counteract any other provision of the Constitution. Because the Plan and Statute merely comply with the eligibility requirements found in Article II, Section 1, clause 5, they cannot be said to be violative of other provisions of the Constitution including the First Amendment.

Moreover, the Supreme Court has concluded that States have "a legitimate interest in regulating the number of candidates on the ballot," and "an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Bullock v. Carter*, 405 U.S. 134, 145 (1972); *see also Timmons v. Twin Cities Area New*

*Party*, 520 U.S. 351, 359 (1997) (upholding state laws excluding certain candidates from the ballot, including those "ineligible for office, unwilling to serve, or . . . another party's candidate."); *Burdick v. Takushi*, 504 U.S. 428, 440 n.10 (1992) ("[L]imiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable.") (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). To the extent presidential candidates have any interest in ballot access, "this must be balanced against the state's right in conducting an orderly election." *De La Fuente v. S.C. Democratic Party*, 164 F. Supp. 3d 794, 801 n.5 (D.S.C. 2016). And "a state's important regulatory interest is generally sufficient to support a restriction that is reasonable and nondiscriminatory." *Id.* at 801. This would include prohibiting constitutionally unqualified candidates from appearing on a primary ballot. *See Hassan v. Colorado*, 495 F. App'x 947, 948 (10th Cir. 2012)("We expressly reaffirm here, a state's legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are constitutionally prohibited from assuming office.").

Applying strict scrutiny, Plaintiffs argue that Uygur's omission from the primary ballot amounts to national origin discrimination. However, as in *Hassan v. Colorado*, this argument is simply a recharacterization of Plaintiffs' repeal claims and thus shares the same fate. *Hassan v. Colorado*, 870 F. Supp. 2d 1192, 1199 (D. Colo.), *aff'd,* 495 F. App'x 947 (10th Cir. 2012)("Accordingly, whether or not the natural born provision discriminates on

its face, a strict scrutiny analysis is not relevant to plaintiff's challenge."). Accordingly, these arguments fail for the reasons discussed above.

At base, Plaintiffs arguments fail because Uygur was excluded from the ballot not because any Defendant determined him to be a naturalized citizen, but because the Constitution deems him ineligible to serve as President. The Court recognizes that the Constitution renders him ineligible based on his status as a naturalized citizen and understands one could argue this is a distinction without a difference. However, the Defendants here cannot be faulted for their attempt to abide by the law which requires adherence to Constitutional requirements. Accordingly, Plaintiffs' constitutional rights were not violated as the state actors simply enforced the natural born citizenship requirement of the Constitution.

Additionally, as noted by the SCDP, there is serious doubt as to whether Uygur complied with all other requirements of the PPP application process. Specifically, the SCDP provided an affidavit from its executive director who avers that "Uygur did not submit any documentation of any kind to the SCDP on or before the deadline showing steps taken to qualify for the delegate selection process in six (6) other states." (ECF No. 53-1, p. 2). Plaintiffs did not necessarily dispute this assertion, but rather averred Uygur's signature and attestation on the application should have sufficed as proof enough to show he had taken the requisite steps in the requisite number of states. This appears to be an issue of fact which is not readily resolved at this point in the proceedings. However, if the SCDP is correct, then an independent ground for denying Uygur's application would justify his

absence from the ballot. Accordingly, much, if not all, of Uygur's arguments would be mooted by his failure to adhere to the proper application procedure.[10] Such a determination would render Plaintiffs' likelihood of success virtually nonexistent.

b. <u>Irreparable Harm</u>

Given the above determination that Plaintiffs have not shown they are likely to succeed on the merits, further discussion of the remaining *Winter* factors is unnecessary. However, the Court will briefly address some additional arguments Plaintiffs present.

In arguing irreparable harm, Plaintiffs aver Uygur's omission from the South Carolina democratic presidential primary ballot acts as a *de facto* deprivation of access to the General Presidential election process, given the existence of "Sore Loser Laws." However, as the SCDP points out, South Carolina's "sore loser" law does not apply to presidential candidates. *See* S.C. Code Ann. § 7-11-210.

 Further, Uygur cannot be considered a "sore loser" as he was not allowed on the ballot and therefore never lost. Thus, Uygur has not been denied access to the general election ballot. He has only been denied the ability to appear on the South Carolina Democratic Presidential Preference Primary ballot pursuant to the SCDP's rules. Accordingly, his concerns on this front are unsupported.

---

[10] This is especially true considering the "principle of constitutional avoidance . . . requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary." *Norfolk S. Ry Co. v. City Of Alexandria*, 608 F.3d 150, 157 (4th Cir. 2010).

c. <u>Balance of Equities and Public Interest</u>

In cases where the defendant is a public actor, courts often consider the balance of equities and the public interest together. *Roe v. Dep't of Def.*, 947 F.3d 207, 230 (4th Cir. 2020).

Here, one fact that weighs heavily against Plaintiffs are the time constraints at play. The South Carolina Democratic Presidential Primary is scheduled for February 3, 2024. By state and federal law, military and overseas ballots were required to be mailed by December 20, 2023. S.C. Code § 7–15–680; 52 U.S.C. § 20302(a)(8). On November 13, 2023, SCDP issued a press release containing the names of the candidates granted ballot access, which did not include Uygur. Plaintiffs failed to file their Complaint and Motion until December 22, 2023. Plaintiffs offer no explanation for their delay, which shows a lack of diligence given the timetable for the primary election. *De La Fuente v. S.C. Democratic Party,* 164 F. Supp. 3d 794, 805 (D.S.C. 2016).  Such delay tips the equitable scale towards the Defendants. Further, this lack of diligence will harm the public interest because any relief granted to Plaintiffs would necessarily require a delay in the primary to ensure Uygur's name gets placed on the ballot. And "applications for a preliminary injunction granting ballot access have been consistently denied when they threaten to disrupt an orderly election." *Perry v. Judd*, 471 F. App'x 219, 227 (4th Cir. 2012) (citing *Fishman v. Schaffer*, 429 U.S. 1325, 1330 (1976)).

Moreover, "[t]he public has an interest in ensuring that the State's primary election is conducted pursuant to state law and that only qualified candidates appear on the ballot."

*De La Fuente*, 164 F. Supp. 3d at 806. And so "[t]he relief sought by [Plaintiffs] is not in the public interest, as it would disrupt the election at the last minute and without an adequate legal basis." *Id*. (citing *Perry*, 471 F. App'x at 227). Plaintiffs do not dispute that that a state has "a legitimate interest in regulating the number of candidates on the ballot." *Bullock v. Carter,* 405 U.S. 134, 145 (1972). Accordingly, the public interest factor weighs against Plaintiffs request for an injunction.

## IV.     CONCLUSION

For all of the reasons stated above and during the January 10, 2023, hearing, Plaintiffs' motion for a preliminary injunction is denied.

IT IS SO ORDERED.

January 16, 2024                              Joseph F. Anderson, Jr.
Columbia, South Carolina              United States District Judge